## IN THE UNITED STATE DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **JOHN GANNON, INC.,** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-cv-3190** |
| | § | |
| **TEXAS DEPARTMENT OF** | § | |
| **TRANSPORTATION** | § | |
| **Defendant** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

John Gannon, Inc. ("JGI") files its Original Complaint, complaining of Defendants, the Texas Department of Transportation, the Texas Transportation Commission, and Marc D. Williams, in his official capacity as the Executive Director of the Texas Transportation Commission, and shows the Court the following:

### I.  PARTIES

1.     Plaintiff, John Gannon, Inc., is a Texas corporation authorized to do business in Texas, which may be served through its counsel, Michael C. Falick, Rothfelder & Falick, L.L.P.

2.     Defendant, Texas Department of Transportation ("TxDOT" and/or the "Department") is an agency of the State of Texas with its offices located at 125 E. 11th Street, Austin, Texas 78701.  Defendant TxDOT may be served through its Executive Director, Marc Williams, at the offices of TxDOT located at 125 E. 11th Street, Austin, Texas 78701.

3.     Defendant, the Texas Transportation Commission (the "Commission"), is the governing body of TxDOT with its offices located at 125 E. 11th Street, Austin, Texas 78701. The Commission may be served through its Executive Director, Marc D. Williams, at the offices of TxDOT located at 125 E. 11th Street, Austin, Texas 78701.

4.      Defendant, Marc D. Williams, is the Executive Director of the Commission.  Mr. Williams may be served in his official capacity at the offices of TxDOT located at 125 E. 11th Street, Austin, Texas 78701.

## II.  JURISDICTION AND VENUE

5.      The Court has jurisdiction over the Department, which conducts the public's business throughout the State of Texas.

6.      The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because JGI is seeking relief pursuant to 42 U.S.C. § 1983.

7.      Venue is proper in the Southern District of Texas because a substantial part of the events or omissions giving rise to JGI's claims occurred, or a substantial part of property that is the subject of this action is situated, in the Southern District. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this claim occurred in this District.

## III.  SOVEREIGN IMMUNITY

8.      The Department and Commission are not immune from suit because governmental entities are not shielded from a suit for equitable relief for a violation of constitutional rights. Defendant Williams is not immune from suit because he acted ultra vires in violating JGI's constitutional rights.

## IV.  FACTUAL BACKGROUND

### A.  INTRODUCTION

9.      This case involves the Department's cancellation of a State-issued commercial sign (a/k/a billboard) permit and the imposition of $235,500.00 in administrative penalties for purported violations of State regulations relating to three separate commercial sign permits.

**B.     TxDOT's Regulation of Commercial Signs**

10.     Acting through the Department, the State regulates billboards and the display of outdoor advertising adjacent to regulated highways pursuant to Chapter 391 of the Texas Transportation Code (the Highway Beautification Act and/or "Act") and Title 43, Part 1, Chapter 23, Subchapter I, Division 1 of the Texas Administrative Code (the "Regulations")

11.     The Act and Regulations grant TxDOT the authority to cancel commercial sign permits only in very specific instances for limited, specified violations of TxDOT's Regulations. 43 Tex. Admin. Code § 21.176. The Act and Regulations also provide the Department with limited, specifically delineated grounds to impose administrative penalties for violations of TxDOT's Regulations. 43 Tex. Admin. Code § 21.204. Following the cancellation of a permit or imposition of penalties, the permit holder may submit an appeal by requesting an administrative hearing before the State Office of Administrative Hearings (SOAH). 43 Tex. Admin. Code §§ 21.176(d) & .204(e). An Administrative Law Judge (ALJ) presides over a hearing on the merits in SOAH and subsequently prepares a proposal for decision, 1 Tex. Admin. Code § 155.507, which the Texas Transportation Commission considers before issuing an Order to either uphold or revise the proposed cancellation or imposition of penalties. 43 Tex. Admin. Code §§ 1.36 & .37.

**C.     TxDOT's Enforcement Efforts and the Proceedings in SOAH**

12.     As further explained below, the Department mailed JGI Notices of Cancellation for JGI's State-issued commercial sign Permits PMT-HBA-25622 ("Permit 25622"), PMT-17-00317 ("Permit 17-00317"), PMT-HBA-26375 ("Permit 26375"), and PMT-17-00196 ("Permit 17-00196").

13.     Upon receipt of each Notice of Cancellation, JGI timely notified TxDOT that it contested the allegations made by TxDOT to justify cancellation of the permits, and out of an

abundance of caution, JGI's written response to each Notice of Cancellation included a request for abatement of any claimed administrative penalties. The Department ultimately initiated a contested case process in the State Office of Administrative Hearings (SOAH) in *Texas Department of Transportation v. John Gannon, Inc.*; SOAH Docket No. 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; Before the State Office of Administrative Hearings (the "SOAH Proceeding").

    **i.**    **Permit 17-00196**

14.    The application for Permit 17-00196 was submitted by Lee Johnson and issued by TxDOT on May 17, 2017. The permit was subsequently transferred to JGI and the sign was constructed by JGI. On December 6, 2019, TxDOT sent JGI a Notice of Cancellation of Permit 17-00196 in which TxDOT alleged that JGI's sign violated 43 Tex. Admin. Code § 21.188 as follows:

> 43 TAC §21.188 . . . An application for new commercial sign permit or a permit renewal must include a certification by the applicant that the proposed or existing sign will withstand wind load pressures. . . . More specifically, our inspector found that the structural integrity of the pole has been compromised and does not meet wind load requirements.

TxDOT further claimed that the sign violated the height limit found in Tex. Transp. Code § 391.038.

15.    TxDOT's First Amended Petition in the SOAH Proceeding referenced the December 6, 2019, Notice of Cancellation and claimed that (1) JGI had failed to include the required wind load certification, and (2) the sign violated the § 391.038 height limit. TxDOT's Director of the Department's Commercial Signs Program, Wendy Knox, readily admitted that TxDOT could have issued separate notices for these claimed violations and allowed JGI the opportunity to cure the claimed height violation. TxDOT chose not to do so, and up to and including the first day of trial, continued to create new grounds to cancel Permit 17-00196.

### ii.      Permits 26375 and 17-00317

16.      TxDOT's December 11, 2019, Notices of Cancellation of JGI's Permit 26375 and Permit 17-00317 allege that the signs were constructed with faces in excess of six hundred seventy-two square feet in violation of 43 Tex. Admin. Code §21.182(a), which provides, "(a) A sign face may not exceed: (1) 672 square feet in area; (2) 25 feet in height; and (3) 60 feet in length."

17.      TxDOT's cancellation of Permit 17-00317 failed to account for 43 Tex. Admin. Code § 21.182(c), which provides:

> (c)      Notwithstanding the area limitation provided by subsection (a)(1) of this section, one or more temporary protrusions may be added to a sign, provided that the sign face, including the protrusions, meets the height and length limitations of subsection (a) of this section and:
> > (1)      the area of a protrusion is located exclusively inside of the sign face border and trim; or
> > (2)      the area of the protrusion is outside of the sign face border and trim, as indicated on the sign permit, and ***does not exceed 10 percent of the permitted area***.

(emphasis added). JGI permitted and constructed Permit 17-00317 in 2017, and since that time, the sign has been maintained to accommodate temporary protrusions that did not exceed ten percent of the area of the sign. Specifically, TxDOT claimed that the Permit 17-00317 sign faces measured seven hundred twenty (720) square feet in size. Permit 17-00317 is permitted for six hundred seventy-two square feet (672), ten percent of which is approximately sixty-seven (67) square feet. Thus, after factoring in the additional sixty-seven (67) square feet allowed for protrusions, the Permit 17-00317 sign may be as large as seven hundred thirty-nine (739) square feet. Taking TxDOT's allegation as true (i.e., that the sign is seven hundred twenty square (720) feet in size), the Permit 17-00317 sign is still within the dimensions allowed under 43 Tex. Admin. Code § 21.182.

18.     JGI permitted and constructed Permit 26375 in 2009, pursuant to the previous version of 43 Tex. Admin. Code § 21.182(c), which provided:

> Notwithstanding the area limitation provided by subsection (a)(1) of this section, one or more temporary protrusions may be added to a sign provided that:
> (1)    the sign face, including the protrusions meet the height and length limitations of subsection (a) of this section;
> (2)    the area of the protrusion does not exceed 35 percent of the area indicated on the sign permit; and
> (3)    the sign face, including the area of the protrusions, does not exceed 907 square feet in area.

(emphasis added). Since 2009, the Permit 26375 sign has been maintained to accommodate temporary protrusions that do not exceed thirty-five percent of the area of the sign. Specifically, Permit 26375 allows for sign faces measuring six hundred seventy-two (672) square feet, thirty-five percent of which is approximately two hundred thirty-five (235) square feet. Thus, the maximum allowable size of the Permit 26375 sign, after allowing for temporary protrusions, is nine hundred seven (907) square feet. Taking TxDOT's allegation as true (i.e., that the sign is eight hundred thirty-six (836) square feet in size), the Permit 26375 sign is still within the grandfathered dimensions allowed under the applicable provisions of 43 Tex. Admin. Code § 21.182.

### iii.    Permit 25622

19.     The Permit 25622 sign is perhaps the best example of TxDOT's targeted efforts to harm JGI. TxDOT repeated errors over a period of a decade. Nevertheless, TxDOT pursued the cancellation of Permit 25622 and the imposition of nearly $1 million in administrative penalties in the face of such mistakes and the evidence that the sign complies with the applicable regulations.

20.     The Permit 25622 saga began in 2009, when JGI obtained the permit to relocate a 10' x 28' sign due to a TxDOT highway construction project.  To relocate the sign to its present location, JGI had to obtain a permit from the City of Houston as the sign site is within the City's extraterritorial jurisdiction.  The City issued its permit on December 3, 2008.  JGI then provided

the City of Houston permit to TxDOT along with the application for the TxDOT permit, which TxDOT issued in 2009.  As discussed below, TxDOT then inspected the location multiple times and found it to be in compliance with the Department's regulations.

21.     Prior to 2016, even though TxDOT allowed signs to be 672 square feet, when a sign was relocated, the relocated sign had to be re-built at the same size at the new location that it had been at the prior location. Once built, the sign owner could then apply for an amended permit, dismantle the newly constructed sign, and re-build it at a size of 672 square feet. In 2016, TxDOT changed its regulations to eliminate this costly and unnecessary amended permit and build/re-build requirement and to allow construction of a relocated sign at 672 sq. feet regardless of the sign's original size.  The Permit 25622 sign had been relocated at its original 10' x 28' size. When TxDOT changed the rule, JGI assumed that the rule change applied to the Permit 25622 sign, and that the sign could therefore be increased in size to 672 square feet without the need to submit an amended permit application.

22.     On November 6, 2017, TxDOT, through its Inspector E. J. DeLeon, issued a Permit Violation Notice and advised JGI that the change in the sign size was the type of "substantial change that may be made but [which] require[s] an amended permit before the initiation of such an activity" pursuant to 43 Tex. Admin. Code § 21.191(c)(5).  The notice from Inspector DeLeon provided that JGI could cure the violation by simply submitting an amended permit application within 60 days and paying a $500 fine. JGI complied with both requirements, and TxDOT cashed JGI's check.

23.     Despite JGI's compliance with Inspector DeLeon's requirements, on January 4, 2018, TxDOT denied JGI's amended permit application based on a new allegation that the Permit 25622 sign was too close to a ramp in violation of 43 Tex. Admin. Code §21.193(b). JGI appealed

and on February 13, 2018, TxDOT sent a highly unusual "Notice of Receipt of Appeal," and also

for the first time claimed that "the permit, granted in 2009, was issued in error." JGI vehemently

disagreed with TxDOT's assertion.

24.     On July 2, 2018, TxDOT sent JGI a Notice of Cancellation of Permit 25622 in

which TxDOT alleged that the sign violated 43 Tex. Admin. Code § 21.193(b). TxDOT claimed

that, despite the fact the sign was constructed in early 2009, and despite the fact that the sign had

been inspected multiple times by TxDOT in the intervening years,

> . . . it has come to our attention that the above referenced relocation permit was
> issued in error in January 2009. ***The location is not located within the boundaries
> of an incorporated municipality***, and as such, must be at a distance greater than
> 500 feet from a ramp or the ramp's acceleration or deceleration lane.

(emphasis added). JGI timely appealed the permit cancellation and requested an administrative

hearing. TxDOT then waited almost a year before it filed its Original Petition on June 17, 2019.

The Original Petition continued to show TxDOT's critical incorrect application of the regulation

to the facts. At trial, TxDOT's live pleading, its First Amended Petition, alleged that

> TxDOT properly noticed JGI of TxDOT's Notice of Cancellation . . . on or about
> July 2, 2018. TxDOT's Notice of Cancellation informed JGI its sign was being
> maintained with two 14'x48' faces in violation of the permit approved to be
> maintained with two 10'x28' faces and the sign is located within 500 feet of a ramp.

25.     At the outset, it should be noted that TxDOT's records show that its initial review

of JGI's permit application did indeed erroneously identify the sign's location. Despite this

knowledge, TxDOT readily admitted repeated errors in connection with Permit 25622.  These

mistakes began with the original permit application, which TxDOT's inspector Bruce Rychlik

stated was located in Spring rather than Houston, i.e., outside an incorporated municipality.

26.     There is no dispute that the Permit 25622 sign is located within the extraterritorial

jurisdiction ("ETJ") of the City of Houston. JGI believed that the sign was subject to the City's

jurisdiction and therefore not subject to the requirements of TxDOT's ramp spacing regulation. However, in order to make sure that even if TxDOT later made such an assertion the sign would still comply, JGI retained John Weeks, a surveyor used by the Department, to verify that the sign fully complied with the ramp spacing requirements.

27.     While TxDOT's inspector, Mr. Rychlik, failed to properly identify that the Permit 25622 location was within Houston's ETJ, he nonetheless measured the location and like John Weeks, found that the sign site was more than 500 feet from the ramp. A year later, as part of the permit renewal process for Permit 25622, TxDOT once again inspected the location, this time using its Inspector Jeneane Dyer. The renewal inspection also incorrectly identified the sign's location – this time as being in Oak Ridge North but reported no issue with the sign's proximity to the ramp.

28.     TxDOT's claim that the sign violates 43 Tex. Admin. Code § 21.193(b) failed as a matter of law for two reasons. First, 43 Tex. Admin. Code § 21.193(b)(2)(B) only applies to signs that are outside of an incorporated municipality.  The sign operated pursuant to Permit 25622 is within the City of Houston's ETJ, and as a result, neither 43 Tex. Admin. Code § 21.193(b)(2)(B) nor the predecessor regulation apply. There is no dispute in this case that the City of Houston has jurisdiction to regulate the Permit 25622 sign, and indeed, JGI obtained the required permit from the City in 2008, and has since renewed the permit with the City.

29.     For nearly a decade, TxDOT found no issue with the location of the Permit 25622 sign. Now, TxDOT seeks to add language to 43 Tex. Admin. Code § 21.193(b)(2)(B) to find that the City's ETJ is "outside of an incorporated municipality." As the ALJ noted out in Order No. 5 in the SOAH Proceeding, other TxDOT regulations, including 43 Tex. Admin. Code § 21.187(g), specifically state that "for the purposes of this section, a municipality's extraterritorial jurisdiction

is not considered to be included within the boundaries of the municipality." By contrast, as the ALJ stated, 43 Tex. Admin. Code § 21.193(b)(2)(B) does not include this language. Had TxDOT intended to exclude the City's ETJ from 43 Tex. Admin. Code § 21.193(b)(2)(B), it certainly could have included this limitation in 43 Tex. Admin. Code § 21.193(b)(2)(B). The fact that TxDOT chose not to include this limitation in its own regulation – 43 Tex. Admin. Code § 21.193(b)(2)(B) – clearly demonstrates that 43 Tex. Admin. Code § 21.193(b)(2)(B) does not apply to this case since the sign is within the City's ETJ, over which the City has regulatory and permitting authority.

30.     Even if the Permit 25622 sign is subject to TxDOT's ramp-spacing regulation, two different TxDOT inspectors measured the distance at different times and found that the sign is not located within 500 feet of a ramp or the ramp's acceleration or deceleration lane. Specifically, in 2008, when the permit application was submitted, in 2009, when the permit was issued, and in 2010, when the renewal inspection was conducted, the applicable TxDOT regulation was found in 43 Tex. Admin. Code § 21.160(c)(8)(C)(ii).

31.     In addition to TxDOT's inspectors, JGI's surveyor, John Weeks applied the measurement methodology required by 43 Tex. Admin. Code § 21.160(c)(8)(C)(ii), and as shown on the survey attached to the TxDOT permit application, the Permit 25622 sign is located approximately 539 feet from the ramp. Consequently, as of the date the sign was permitted, and as of the date of the renewal inspection, TxDOT and JGI agreed that the sign met the ramp spacing requirements.

32.     In 2011, TxDOT amended its regulations, and changed the ramp spacing measurement criteria.  The difference between the regulation under which Permit 25622 was issued and renewed, and the revised regulation under which TxDOT erroneously proceeded in the SOAH Proceeding is at the heart of TxDOT's 2018 measurement error and thus, the heart of its

effort to cancel JGI's permit. Specifically, in 2011, TxDOT deleted 43 Tex. Admin. Code § 21.160(c)(8)(C)(ii) and amended 43 Tex. Admin. Code § 21.185(b) to change the ramp spacing requirement for new build signs and 43 Tex. Admin. Code § 21.193 for relocated signs like the Permit 25622 sign. TxDOT's new measurement methodology for new construction, and the failure to include any criteria for relocated signs, created great confusion in the sign industry and for TxDOT's inspectors.  As a result, in 2013, TxDOT issued yet another change to its measurement methodology. Importantly, TxDOT confirmed that the 2013 measurement method used by TxDOT to support the Notice of Cancellation of Permit 25622 is different from the way TxDOT's inspectors measured the Permit 25622 location at the time the permit was issued in 2009, and that she could not dispute the accuracy of the ramp spacing measurements made by TxDOT's inspectors in 2009 and 2010, nor could she dispute the accuracy of the survey provided by JGI with the permit application.

33.    In the absence of the claimed ramp proximity issue, TxDOT confirmed that JGI should have been allowed to simply submit an amended permit application to address the sign size issue.  That was the course of action approved by TxDOT's inspector DeLeon and what JGI followed.  Because the Permit 25622 sign met the regulation in force at the time it was constructed, and because JGI complied with the requirements detailed in the November 6, 2017 Notice, TxDOT's claims related to Permit 25622 should have been dismissed. However, the ALJ and the Commission instead wrongfully held that Permit 25622 should be canceled and imposed an administrative penalty in the amount of $500.00.

### iv.    Administrative Penalties

34.    The Department initiated the SOAH Proceeding on June 17, 2019, by filing its Original Petition related solely to TxDOT's claims that Permit 25622 should be cancelled. Indeed,

as with TxDOT's Notice of Cancellation related to Permit 25622, the Original Petition makes no claim for administrative penalties.

35.    On July 10, 2019, JGI filed its Original Answer.  Out of an abundance of caution, and based on TxDOT's aggressive misapplication of the law in other cases in which JGI's counsel is involved, on October 25, 2019, JGI filed its Amended Answer and stated

> JGI denies that TxDOT is entitled to, and therefore requests the abatement of, any civil, criminal, administrative, or other penalties pending the outcome of these proceedings. Additionally, JGI demands that any such penalties be constitutionally tolled pending the outcome of these proceedings.

36.    On December 6, 2019, TxDOT sent JGI a Notice of Cancellation of JGI's Permit 17-00196.  On December 11, 2019, TxDOT sent Notices of Cancellation of JGI's Permit 17-00317 and Permit 26375.  JGI timely responded to these Notices of Cancellation and in each response, JGI specifically requested an administrative hearing regarding the claimed violations and any potential administrative penalties.

37.    Despite the pendency of the SOAH Proceeding, on February 25, 2020, TxDOT sent a Notice of Administrative Penalty related to Permit 25622 directly to JGI instead of through counsel, which, for the first time, alleged that TxDOT had imposed administrative penalties in the astonishing amount of $1,000 per day totaling $490,000.00.  The Notice of Administrative Penalty provided no information that explained either the basis for or method used to calculate the amount of the penalty.

38.    TxDOT followed the Permit 25622 Notice of Administrative Penalty with Notices of Administrative Penalty for Permits 26375, 17-00317, and 17-00196. The claimed administrative penalties in these notices were as follows:

- March 3, 2020 - Permit 26375 - $229,000.00

- March 12, 2020 - Permit 17-00196 - $107,000.00

- March 13, 2020 - Permit 17-00317 - $361,000.00

And as if the above was not sufficient, again, while the SOAH Proceeding was pending, TxDOT then sent an Amended Notice of Administrative Penalty for Permit 25622 that increased the amount of the claimed administrative penalty from $490,000.00 claimed on February 25, 2020 to $856,000.00 with no explanation for the claimed $366,000.00 increase.

39.     In further disregard for its own procedural and regulatory rules and the statutes governing TxDOT, on March 24, 2020, TxDOT filed its First Amended Petition in the SOAH Proceeding. The Amended Petition, for the first time, added TxDOT's claimed $1,000 daily administrative penalties. As further evidence of the arbitrary nature of TxDOT's assessment of these administrative penalties, the amounts claimed are significantly higher than the amounts in the Notices of Administrative Penalty sent within weeks of the filing. TxDOT's Notice of Administrative Penalty regarding Permit 25622, sent the day before the Amended Petition was filed, claimed administrative penalties in the amount of $856,000.00, one day later, the Amended Petition asserted that the amount of the administrative penalty is $973,000.00, representing an unexplained increase of $117,000.00 (and an increase of $483,000.00 over the amount claimed in the Notice of Administrative Penalty sent one month earlier on February 25, 2020). Similarly, without any justification or explanation, TxDOT increased the claimed administrative penalties for each of the other three signs as follows:

| Permit Number | Date of TxDOT's Notice of Administrative Penalty | Amount Claimed by TxDOT in Notice of Administrative Penalty | Amount Claimed by TxDOT in Amended Petition filed March 24, 2020 |
|---|---|---|---|
| Permit 26375 | March 3, 2020 | $229,000.00 | $366,000.00 |

| Permit 17-00196 | March 12, 2020 | $107,000.00 | $235,000.00 |
| Permit 17-00317 | March 13, 2020 | $361,000.00 | $488,000.00 |

As with the Notices of Administrative Penalty, the Amended Petition provides no information as to the basis for the penalty or the method used by TxDOT to calculate the amount claimed.

40.     By filing the Amended Petition, TxDOT violated the terms of its Notices of Administrative Penalty, and likely, the provisions of 43 Tex. Admin. Code § 21.204, the provision that authorizes such relief under specifically delineated circumstances in the first place. Specifically, the Notice of Administrative Penalty provide that under 43 Tex. Admin. Code § 21.204, JGI has 45 days from receipt of the letter "to request an administrative hearing disputing the imposition of administrative penalties to date." *See* 43 Tex. Admin. Code § 21.204(e).   In response to the Notices of Administrative Penalty, JGI's counsel submitted a detailed response that disputed the basis and authority for TxDOT to impose the claimed penalty.   Nevertheless, despite TxDOT's letters, the requirements of 43 Tex. Admin. Code § 21.204, and the fact that the SOAH Proceeding was filed in June 2019, TxDOT waited until sixty days prior to the discovery deadline and one hundred twenty days prior to the trial date to add $2,062,000.00 of claimed administrative penalties to the SOAH Proceeding.

41.     JGI moved for summary disposition[1] in the SOAH Proceeding and requested that the ALJ dismiss the Department's claims for administrative penalties with prejudice, or in the alternative, hold as a matter of law that any claimed administrative penalties did not begin to accrue until after the Commission issued an order finding a violation that warranted cancellation of the

---

[1] Summary disposition is a procedure for dismissal in SOAH (similar to summary judgment), which allows the ALJ to render judgment on all or part of a contested case if there is no genuine issue as to any material fact and the moving party is entitled to a decision in its favor as a matter of law. 1 Tex. Admin. Code § 155.505.

Permits and imposition of administrative penalties. As explained below, JGI's request for summary disposition relied, in part, on the First Amendment and the doctrine of constitutional tolling.

42.     The ALJ denied JGI's Motion for Summary Disposition through its Order No. 5. In response to JGI's claims that TxDOT's actions violated JGI's Constitutional rights, the ALJ simply stated, "SOAH ALJs do not have authority to resolve Constitutional claims."

**D.     THE ALJ'S PROPOSAL FOR DECISION AND TRANSPORTATION COMMISSION'S MINUTE ORDER**

43.     On August 3, 2020, the parties proceeded to the hearing on the merits in SOAH. After requiring JGI to incur substantial attorneys' fees to defend claims JGI had asserted were legally and factually incorrect, at the prehearing conference held just days before the commencement of the hearing, TxDOT announced that it was dismissing its claims for cancellation of Permits 17-00317, 17-00196, and 26375. TxDOT, however, continued to pursue the cancellation of Permit 25622 and even though TxDOT dismissed its claimed cancellation of three of the four permits, TxDOT nonetheless continued to claim that the ALJ should impose more than $2,000,000 in administrative penalties related to all four permits.

44.     Following the hearing, the ALJ found that Permit 25622 should be canceled and ordered the imposition of administrative penalties in the amount of $235,500.00 for the violations claimed for Permits 17-00196, 17-00317, and 26375. The Commission agreed with the ALJ and issued an order adopting the ALJ's findings and conclusions.

## V.   CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983

45.     The cancellation of Permit 25622 and the administrative penalties TxDOT sought, and that the Commission imposed, were not authorized by the Act or the Regulations. Moreover, by imposing $235,500.00 in administrative penalties, the Department and Commission deprived

JGI of rights afforded JGI under the due process, equal protection, free speech, and other provisions under the United States Constitution.

**A.     43 TEX. ADMIN. CODE § 21.204 DOES NOT PROVIDE THE AUTHORITY TO ASSESS AN ADMINISTRATIVE PENALTY IN ANY AMOUNT.**

46.     The Notices of Administrative Penalty TxDOT issued to JGI stated that TxDOT had imposed administrative penalties against JGI in the amount of $1,000 per day and included the total claimed penalty – $973,000.00 for Permit 25622, $488,000 for Permit 17-00317, $366,000.00 for Permit 26375, and $235,000.00 for Permit 17-00196. The only information JGI had been provided that substantiated TxDOT's basis for the claimed penalties were the Notices of Cancellation, in which TxDOT made conclusory allegations without providing any supporting evidence or documentation to support its claims.

47.     TxDOT's interpretation of the applicable regulations and statutes would weaponize administrative penalties and allow TxDOT to force acquiescence by sign owners fearful of crushing administrative penalties for even the most minor of infractions. The regulatory history simply does not support TxDOT's improper assessment of administrative penalties. Specifically, in 2012, 43 Tex. Admin. Code § 21.204 was approved after it went through the notice, hearing, comment, and other rulemaking requirements of the Administrative Procedures Act. The Texas Register reflects the following explanatory comment from the Texas Transportation Commission as the basis for adoption of new regulation Section 21.204:

> New §21.204, Administrative Penalties, is added to comply with statutory changes. ***The new rule provides the process for imposing administrative penalties*** to correlate to administrative penalties in §21.426. . . . ***The Sunset Commission review for the 2009 legislative session recommended that the department develop a penalty matrix and the department believes it will help eliminate some of the contested cases by offering a set penalty for the violation.***[2]

---

[2] 37 TexReg 2688 (emphasis added).

48.     As a result, after the lengthy process required to create regulations, Section 21.204 was instituted to offer a clear "set penalty for [specific] violations." Section 21.204 limits the imposition of administrative penalties to very limited, specifically delineated circumstances that correspond to particularly alleged violations. In particular, consistent with the explanatory comment above, Section 21.204(b) provides that administrative penalties are permitted only in the following limited schedule of violations, and only in the amounts stated:

  (1)     $250 for a violation of:

     (A)     a registration requirement of §21.162 of this subchapter (relating to Permit Application for Certain Preexisting Commercial Signs); or

     (B)     erecting the sign at a location other than the location identified by stake or paint, except that if the sign location as built does not conform to all other requirements the department will seek cancellation of the permit;

  (2)     $500 for:

     (A)     maintaining or repairing the sign from the state right of way; or

     (B)     performing customary maintenance on any sign or substantial changes on a conforming sign without first obtaining an amended permit as required by §21.191 of this subchapter (relating to Repair and Maintenance of Commercial Signs); or

  (3)     $1,000 for erecting a sign from the right of way.

49.     TxDOT asserted administrative penalties in the amount of $1,000 per day per Permit. There was no evidence, pleading, or claim in the SOAH Proceeding that JGI "erect[ed] a sign from the right of way," which is the only basis for imposition of an administrative penalty in the amount of $1,000 per day. Moreover, the claimed violations in the Notices of Cancellation were not included in the list of violations found in 43 Tex. Admin. Code § 21.204. Therefore, TxDOT had no authority to assess an administrative penalty in any amount.

50.     The ALJ appeared to agree in part with JGI's analysis and imposed $235,000.00 in administrative penalties, despite TxDOT's request for imposition of significantly more.

**B.     ADMINISTRATIVE PENALTIES WERE NOT PERMITTED BECAUSE THE PERMIT CANCELLATIONS WERE ABATED PURSUANT TO 43 TEX. ADMIN. CODE § 21.176.**

51.     43 Tex. Transp. Code § 21.176 provides that TxDOT may cancel a permit if a sign is not maintained in accordance with "Transportation Code, Chapter 391." *See* 43 Tex. Admin. Code §21.176(a)(2). "Upon determination that a permit should be canceled, the department will mail a notice of cancellation to the address of the record license holder." 43 Tex. Admin. Code § 21.176(c). A license holder may request an administrative hearing to dispute the cancellation "within 45 days after the date that the notice of cancellation is received." 43 Tex. Admin. Code § 21.176(d). "If timely requested, an administrative hearing will be conducted in accordance with Chapter 1, Subchapter E of this title (relating to Procedures in Contested Case) and *the cancellation is abated until the cancellation is affirmed by order of the commission*." 43 Tex. Admin. Code § 21.176(e) (emphasis added).

52.     TxDOT's Notices of Cancellation included the "right to request an administrative hearing on the question of the cancellation of the permit." JGI timely requested an administrative hearing in response to each Notice of Cancellation. JGI's timely request for an administrative hearing abated the cancellation of JGI's permits. 43 Tex. Admin. Code §21.176(e). Because JGI's permits were not cancelled unless and until the Commission issued an order affirming TxDOT's actions, the attendant alleged violations were likewise abated and the permits remained valid. Tex. Transp. Code § 391.0355(a); 43 Tex. Admin. Code §21.176(e).

53.     TxDOT's Notices of Administrative Penalties were brief form letters, which failed to even list any alleged violations; instead, each Notice of Administrative Penalty merely stated that the basis for the claimed penalty was to be found in the attached Notice of Permit Cancellation.

The Notices of Permit Cancellation, in turn, had been appealed, and the cancellation of the Permits had been abated pursuant to 43 Tex. Admin. Code § 21.176(e); so, it follows that the alleged violations for the permit cancellations were abated as well, especially since the Notices of Administrative Penalty failed to even allege a violation warranting imposition of penalties. I think referring back to the explanation of the calculation of penalties that should be added to the factual background will help explain why this issue is a constitutional violation.

## C.   ADMINISTRATIVE PENALTIES WERE ABATED PURSUANT TO 43 TEX. ADMIN. CODE § 21.204(F).

54.   43 Tex. Admin. Code §21.204(d) provides that

Upon determination to seek administrative penalties the department will mail a notice of the administrative penalties to the last known address of the permit holder. The notice must clearly state:

(1)   the reasons for the administrative penalties;
(2)   the amount of the administrative penalty; and
(3)   the right of the holder of the permit to request an administrative hearing.

Consistent with these requirements, TxDOT's Notices of Administrative Penalty provided that, pursuant to 43 Tex. Admin. Code § 21.204(e), JGI had forty-five days to appeal and dispute the imposition of administrative penalties. JGI timely submitted its written dispute of the claims asserted in the Notices of Administrative Penalty.

55.   In addition, 43 Tex. Admin. Code § 21.204(f) provides that,

If timely requested, an administrative hearing shall be conducted in accordance with Chapter 1, Subchapter E of this title (relating to Procedures in Contested Case), *and the imposition of administrative penalties will be abated unless and until that action is affirmed by order of the commission.*

(emphasis added). In disregard of JGI's right to dispute the administrative penalty, TxDOT filed its Amended Petition in the SOAH Proceeding prior to the expiration of the forty-five days provided by 43 Tex. Admin. Code § 21.204.

56.     TxDOT's attempt to assess administrative penalties prior to the administrative hearing violated 43 Tex. Admin. Code § 21.204(f), which clearly states that "the imposition of administrative penalties is abated unless and until that action is affirmed by order of the commission." Pursuant to 43 Tex. Admin. Code § 21.204(f), once JGI requested the administrative hearings, the imposition of administrative penalties was abated. As clearly provided by 43 Tex. Admin. Code § 21.204(f), not only was JGI not liable for an administrative penalty, TxDOT's regulations specifically prohibited TxDOT from imposing an administrative penalty. Clearly, where the disputed allegations are specifically not included in the listed regulatory grounds for punitive administrative penalties, the statutes and regulations do not contemplate the imposition of $1,000 daily administrative penalties totaling $2,062,000.00, as TxDOT sought in the SOAH Proceeding. And indeed, the statutes and regulations provide quite the opposite – penalties do not commence until and unless the claimed violation is affirmed by order of the Commission, which necessarily follows the completion of the SOAH administrative hearing.

D.     **ADMINISTRATIVE PENALTIES WERE ABATED BY THE DOCTRINE OF CONSTITUTIONAL TOLLING.**

57.     Any administrative penalties were abated pursuant to the doctrine of constitutional tolling.

58.     A party who brings a good faith judicial challenge to a governmental action is not subject to penalties for noncompliance while the challenge is pending, even if the challenge ultimately proves unsuccessful. *Ex Parte Young*, 209 U.S. 123, 148 (1908).  In this context, "good faith" means not frivolous, and in such a case, it has been settled case law for more than a century that a Court will enjoin the imposition of the penalties that would otherwise accrue during the pendency of the litigation. *Oklahoma Operating Co. v. Love*, 252 U.S. 331 (1920); *Wadley*

*Southern RR Co. v. Georgia,* 235 U.S. 651 (1915). In explaining the application of the doctrine of

constitutional tolling, in 1915, the United States Supreme Court stated:

> A statute, therefore, which imposes heavy penalties for violation of commands of
> an unascertained quality is, in its nature, somewhat akin to an *ex post facto* law,
> since it punishes for an act done when the legality of the command has not been
> authoritatively determined. Liability to a penalty for violation of such orders,
> before their validity has been determined, would put the party affected in a position
> where he himself must, at his own risk, pass upon the question. He must either
> obey what may finally be held to be a void order, or disobey what may ultimately
> be held to be a lawful order. If a statute could constitutionally impose heavy
> penalties for violation of commands of such disputable and uncertain legality, the
> result inevitably would be that the carrier would yield to void orders, rather than
> risk the enormous cumulative or confiscatory punishment that might be imposed if
> they should thereafter be declared to be valid.

*Wadley S. Ry. Co. v. State of Georgia*, 235 U.S. 651, 662–63, 35 S. Ct. 214, 218, 59 L. Ed. 405

(1915); *see also, State v. Crown Central Petroleum Corp.,* 369 S.W.2d 458, 463 (Tex. Civ. App.

–Austin 196,3 no writ) (recognizing applicability of doctrine in Texas). The protections of this

"constitutional tolling" against financial penalties extend through the entire litigation, including

denial of petitions for certiorari. *U.S. v. Pacific Coast European Conf.,* 451 F.2d 712, 719 (9th Cir.

1973). Monetary penalties alone are enough to invoke constitutional tolling. *Oklahoma Operating*

*Co. v. Love*, 252 U.S. 331, 334–35 (1920).

59.     In response to its receipt of the Notices of Cancellation and Administrative Penalty,

JGI timely requested administrative hearings in order to challenge the validity of TxDOT's actions.

JGI's responses to the Notices of Cancellation and Administrative Penalty included detailed

reasons that contradict TxDOT's assertions to support the cancellation of the permits and attempts

to improperly impose administrative penalties.

60.     If TxDOT and the Commission were permitted to impose exorbitant penalties

totaling more than $200,000 in the face of JGI's timely request for the administrative review of

TxDOT's purported permit cancellations, "the result inevitably would be that the [permit holder]

would yield to void orders, rather than risk the enormous cumulative or confiscatory punishment that might be imposed . . ..” *Wadley S. Ry. Co.*, 235 U.S. at 663–64. As such, the imposition and accrual of the excessive monetary penalties sought by TxDOT should have been abated.

**E.    THE THREAT THAT ADMINISTRATIVE PENALTIES MIGHT BE IMPOSED WAS A PROHIBITED PRIOR RESTRAINT OF JGI'S FIRST AMENDMENT FREE SPEECH RIGHTS.**

61.    Any effort to impose administrative penalties, and indeed, even the threat that such extraordinary administrative penalties might be imposed, was a prohibited prior restraint of JGI's constitutionally protected First Amendment free speech rights.

62.    A prior restraint on speech is conduct that restricts, or "chills," speech before the speech is communicated. While prior restraints are not unconstitutional *per se*, any system of prior restraint faces "a heavy presumption against its constitutional validity." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). Laws that burden speech, including those burdening billboards, are looked at with skepticism, and any prior restraint on speech bears "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 161 (1939). As the Supreme Court held in *Freedman v. Maryland*, "(1) any restraint prior to judicial review can be imposed only for a brief period during which the status quo must be maintained [and] (2) expeditious judicial review of that decision must be available." *Freedman v. Maryland*, 380 US 51, 58-59 (1965).

63.    Billboards and other signs represent a medium of expression that the Free Speech Clause has long protected. *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005). When a licensing statute "place[s] unbridled discretion in the hands of a government official or agency" over whether to permit or deny expressive activity, "such a statute constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S.

750, 756 (1988). The court in *Lakewood* stated that to prevent this risk of censorship, the governmental entity must "establish neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered." *Id.* at 785. "At stake is the risk that in the absence of 'narrowly drawn, reasonable and definite standards for the officials to follow,' the law invites opportunities for the unconstitutional suppression of speech." *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 509 (6th Cir. 2001) (quoting *Niemotko v. Maryland*, 340 U.S. 268, 271 (1951)).

64.     In the SOAH Proceeding and through the subsequent issuance of the Minute Order, TxDOT and the Commission, governmental actors, sought to chill JGI's right to communicate via its signs by the imposition of extraordinary administrative penalties. As stated, if TxDOT's interpretation of the applicable regulations were allowed, JGI would be in the untenable position of choosing between defending its First Amendment rights and risking hundreds of thousands of dollars of penalties prior to any opportunity for JGI's rights to be adjudicated. The very long history of prior restraint cases mandates that TxDOT's interpretation is incorrect as a matter of law. In addition to the cases cited above, there are countless Supreme Court and Courts of Appeals opinions that prohibit this type of confiscatory penalty based on the First Amendment, including the following:

> *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963): explaining that use of "informal sanctions," including "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," may give rise to a prior restraint.

> *Multimedia Holdings Corp. v. Circuit Ct. of Fla., St. Johns Cnty.*, 544 U.S. 1301, 1306 (2005): "A prior restraint may take many forms, including . . . informal procedures undertaken by officials intended to chill expression."

> *Backpage.com, LLC v. Dart*, 807 F.3d 229, 236–38 (7th Cir. 2015): explaining that a threat constituting a prior restraint does not become lawful simply because it comes "clothed in what the absence of any threatening language would have been a permissible attempt at mere persuasion."

*Okwedy v. Molinari*, 333 F.3d 339, 340–41 (2d Cir. 2003): "A public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights."

65.     Based on the cited authorities, TxDOT's threatened administrative penalties constituted a prior restraint of JGI's protected free speech rights.

**F.     REQUESTED RELIEF**

66.     TxDOT and the Commission unlawfully and unconstitutionally imposed exorbitant administrative penalties on JGI totaling $235,500. JGI seeks and is entitled to an order from this Court holding that TxDOT and the Commission are not authorized to impose any administrative penalties on JGI for the reasons stated above. JGI is also entitled to the recovery of damages incurred as a result of Defendants' infringement of JGI's constitutional rights, including the costs incurred defending against TxDOT's claims. Additionally, JGI hereby requests the Court to assess its reasonable costs and attorneys' fees against Defendants pursuant to 42 U.S.C. § 1988(b).

## VI.  REQUEST FOR DECLARATORY RELIEF PURSUANT TO TEX. GOV'T CODE § 2001.038

67.     Pursuant to Texas Government Code Section 2001.038, JGI seeks a determination regarding the validity or applicability of the rules TxDOT applied in its attempts to cancel Permit 25622 or impose administrative penalties with respect to Permits 17-00196, 17-00317, and 26375. As further described above, TxDOT's rules and their application interfere with or impair, or threaten to interfere with or impair, the legal rights and privilege of JGI.

## VII.  APPLICATION FOR INJUNCTIVE RELIEF

68.     JGI requests the issuance of a temporary restraining order and temporary injunction to enjoin Defendants' efforts to remove the sign subject to Permit 25622 or impose any civil or administrative penalties pending the outcome of this litigation.

69.     JGI's application for a temporary restraining order is authorized by Tex. Civ. Prac. & Rem. Code Chapter 65 and Tex. Gov't Code §§ 2001.035 and 2001.038. *See Rutherford Oil Corp. v. General Land* Office, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ) (Section 2001.038 cause of action evidences a legislative intent to allow a party the right to a final declaration of a rule's validity before the rule is applied; to allow the agency to speed ahead with the hearing, render a final order, and leave the party to merely appeal the final agency order, would ―wholly nullify the purpose of a section 2001.038 declaratory judgment action); *Hosps. & Hosp. Sys. v. Cont'l Cas. Co.*, 109 S.W.3d 96, 101–02 (Tex. App.—Austin 2003, pet. denied) (a temporary injunction is not only available but is often a necessity to protect one's rights in specific agency hearings pending the outcome of a declaratory judgment action to determine the validity of a rule.).

70.     The enforcement of TxDOT's regulations in such a way that would lead to the removal of the Permit 25622 sign or imposition of civil or administrative penalties will cause irreparable harm to JGI for which there is no adequate remedy at law.

71.     Because Defendants' application of TxDOT's regulations violates JGI's constitutional rights, JGI is likely to succeed on the merits.

72.     If JGI's application is not granted, harm is imminent because the continued implementation and application of the Department's regulations will result in significant detriment of JGI as described above.

73.     JGI has no adequate remedy at law because the Permit 25622 sign is legally grandfathered and injury to JGI by the application and implementation of the Department's rules is immeasurable, permanent, and irreparable.

74.     JGI asks that Defendants be restrained from taking any action to remove the Permit 25622 sign or impose civil or administrative penalties.

75.     JGI is willing and able to post a bond.

76.     JGI asks the Court to set its application for temporary injunction for a hearing, and after the hearing, issue a temporary injunction as specified above. The injunction should order all Defendants to cease and desist any action to remove the Permit 25622 sign or impose administrative or civil penalties until the conclusion of this litigation. JGI further asks the Court to set its request for a permanent injunction for a full trial on the merits and, after the trial, to issue a permanent injunction against Defendants to prevent Defendants from taking any action to remove the Permit 25622 sign or impose administrative or civil penalties..

## **PRAYER**

WHEREFORE, Plaintiff, John Gannon, Inc., respectfully requests that this Court grant relief and enter judgment in its favor against Defendants, as follows:

a.     An order holding that TxDOT and the Commission are not authorized to impose any administrative penalties on JGI with respect to the violations claimed for Permits 17-00196, 17-00317, and Permit 26375;

b.     An award of damages John Gannon, Inc. incurred as a result of Defendants' unlawful actions;

c.     Reasonable costs and attorneys' fees against Defendants pursuant to 42 U.S.C. § 1988(b);

d.    A declaratory judgment that TxDOT's rules and their application interfere with or impair, or threaten to interfere with or impair, the legal rights and privilege of JGI;

e.    Issue a temporary restraining order, a temporary injunction, and permanent injunction barring any efforts to remove the Permit 25622 sign or impose administrative or civil penalties; and

f.    Such other relief to which John Gannon, Inc. may be entitled.

Respectfully submitted,

**ROTHFELDER & FALICK, L.L.P.**

**_/s/ Michael C. Falick_**
Michael C. Falick
State Bar No. 06794600
mfalick@rothfelderfalick.com
Richard L. Rothfelder
Texas Bar No. 17318100
rrothfelder@rothfelderfalick.com
1201 Louisiana, Suite 550
Houston TX 77002
Telephone: 713-220-2288
Facsimile: 713-658-8211
**ATTORNEYS FOR PLAINTIFF,
JOHN GANNON, INC.**